UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/24/2020

HECTRONIC GmbH and HECTRONIC AG,

                              Plaintiffs,

              - against -                           20 Civ. 2964 (LLS)

HECTRONIC USA CORP., PURE PARKING          OPINION & ORDER
TECHNOLOGIEES LLC, POWER DOOR
PRODUCTS, INC., KAREN CARDILLO and
PAUL CARDILLO,

                              Defendants.

        Plaintiffs Hectronic GmbH and Hectronic AG assert claims of

trademark infringement, unfair competition, false advertising,

breach of contract, and breach of fiduciary duty. Defendants

Hectronic USA, Pure Parking Technologies, Power Door Products,

Karen Cardillo and Paul Cardillo move to dismiss the claims

against them for failure to state a claim upon which relief can

be granted.

        For the reasons set forth below, defendants' motion is

granted in part and denied in part.

### BACKGROUND

        The following facts are as alleged in the Complaint (Dkt.

No. 23) and accompanying exhibits (Dkt. No. 1).

        This case arises out of a joint venture between plaintiffs

and defendants, memorialized in several agreements which

plaintiffs claim defendants have breached. Plaintiffs also claim

defendants breached their fiduciary duties and engaged in the

unauthorized use of plaintiffs' marks in violation of the Lanham

Act and New York unfair competition law. Compl. ¶¶ 1,4-7, 22-25.

Plaintiffs develop, manufacture and sell parking equipment and parking-related software applications. Id. ¶20. Plaintiffs sell their equipment under the marks "HECTRONIC", "CITEA" and "HECTWIN" (the "Hectronic marks"). Id. ¶ 3. On August 26, 2008, plaintiff Hectronic AG obtained registration with the United States Patent & Trademark Office ("USPTO") for the trademark "HECTRONIC". Id. ¶ 22. On November 23, 2010, it obtained registration with the USPTO for the trademark "CITEA". Id. ¶ 23. "HECTWIN" is not a registered trademark. Id. ¶ 25.

Defendant Hectronic USA (the "Company"), was, until 2016, a wholly-owned subsidiary of plaintiff corporation Hectronic AG and acted as a United States distributor of plaintiffs' products. Id. ¶¶ 28-29. Prior to the spring of 2016, defendant Pure Parking Technologies ("Pure Parking") was also an authorized reseller of Hectronic's parking products. Id. ¶ 30. Defendants Karen and Paul Cardillo own Pure Parking Technologies. Id. The Cardillos also own defendant corporation Power Door Products ("Power Door"). Id. ¶ 7.

In May of 2016, Hectronic AG and Pure Parking entered into a Stock Purchase Agreement (the "SPA"), whereby Hectronic AG agreed to sell 80% of the stock in Hectronic USA to Pure Parking for the purchase price of $191,300. Id. ¶¶ 33-34. Pursuant to paragraph 3 of the SPA, Pure Parking was required to tender a down payment of $40,000 to Hectronic AG and a Note "in the

-2-

amount of the $151,300 payable as detailed in the Note." Id. Ex.
A ¶ 3. The Note required Pure Parking to make annual installment
payments to Hectronic AG through May 15, 2020. Id. Ex. B.

Following the sale, Pure Parking became the majority owner
of the Company and Hectronic AG (the Company's former parent)
retained the remaining 20%. Id. ¶ 38.

The terms and conditions by which the Company was to sell
Hectronic products in the United States were governed by the
Distributor Agreement. Id. ¶ 42. Under the Distributor
Agreement, the Company, as "Distributor" had "the right to
purchase the Contract Goods from HEC [Hectronic GmbH] for re-
sale." Id. Ex. C ¶ 4.1. The Company was "solely responsible for
marketing and advertising the Contract Goods in the Distribution
Area in a manner reasonably acceptable to HEC." Id. Ex. C ¶ 4.5.
The Distributor Agreement also prohibited the Company from
competing with Hectronic GmbH over the term of the agreement and
for a period of two years from the date of its termination. Id.
Ex. C ¶ 5.2. Each breach of the non-compete provisions entitled
Hectronic GmbH to liquidated damages of 100,000 Euros. Id. Ex. C
¶ 5.4.

Under the Distributor Agreement, Hectronic GmbH had the
right to immediately terminate the Agreement for "good cause",
defined in part as "a material breach of any provision of this
Agreement". Id. Ex. C ¶ 12.3(a). And upon expiration or
termination, the agreement provided that "Distributor shall:

(a) immediately return any documents, brochures, advertising supplements, price lists, or other materials furnished to it by HEC, and cease acting in the capacity as HEC's distributor, or representing itself as such; . . . ." Id. Ex. C ¶ 12.5(a).

The Parties also agreed on the Company's rights with respect to the Hectronic marks. Paragraph 6.8 of the SPA stated,

> Seller [Hectronic AG] has previously adopted and used the name Hectronic and its associated logo in connection with the provision of services, equipment and technology in the parking technology industry. Seller is the owners [sic] of all the good will associated with such name and logo and Seller and its affiliate, Hectronic GmbH, have the exclusive right to use and license the name and logo in the United States of America. For consideration already stated in this agreement, Seller hereby grants to the Company a non-exclusive, non-transferrable license to use the name Hectronic and its associated logo as its service mark, corporate and trade name in conjunction with the Company's operations in the parking technology industry. This license shall be subject to the terms and restrictions contained in the Distributor Agreement. This license may be terminated by Seller upon the material breach of this agreement.

Id. Ex. A. ¶ 6.8.[1]

After Pure Parking became the majority owner of the Company in May of 2016, defendant Karen Cardillo became a Director of the Company. Compl. ¶¶ 33, 129. Hectronic AG designated Stefan

---

[1] Section 6.6 of the SPA states, "Prior to Closing, Seller shall cause a written modification to the Distributor Agreement . . . to the limited extent of modifying or adding the following provisions: The parties will agree upon terms of usage for the name, brand, logo and other intellectual property of Seller." However, this provision does not appear to have been added to the Distributor Agreement (see Exhibit C), and the Complaint does not detail any other agreement reached by the parties on this regard. Hectronic USA and Hectronic GmbH did enter into a Licensing Agreement (see Ex. D) for the licensing of Hectronic GmbH's parking software product, CityLine. Compl. ¶ 48. However, this agreement only relates to the use of the CityLine software (which is not the basis for any of plaintiffs' claims) and doesn't set forth the parties' agreement regarding the Hectronic marks at issue in this dispute.

-4-

Forster as a Director. Id. ¶ 38. In late 2017, Hectronic AG was
informed that Ms. Cardillo appointed her husband, defendant Paul
Cardillo, to the Board of Directors of the Company, without the
notice or approval of Hectronic AG, the minority shareholder.
Id. ¶ 55.

Since Pure Parking became the majority shareholder, the
Company "only called one Board of Directors meeting", and "Even
as to that one meeting, which took place in March 2018, no
minutes were prepared to memorialize what was discussed." Id. ¶
52. The Company also "failed to hold any shareholder meetings"
and "failed to timely provide information or to answer basic
questions about the limited financial information that was
provided." Id. ¶¶ 53-54. The Cardillos also "caused the Company
to take out loans from the Cardillos' other companies", without
the prior notice or approval of plaintiff Hectronic AG, and
"failed to pay Hectronic for the goods and services supplied in
the net amount of 125,514 Euros, equivalent to approximately
$135,594." Id. ¶¶ 56-57.

Meanwhile, Pure Parking failed to make the required annual
payments of $40,000 due on May 15, 2018 and May 15, 2019. Id. ¶
50. Then, in late April or early May of 2019, Ms. Cardillo
"unilaterally caused Hectronic USA to cease operations, fired
all of the company's employees, and notified the company's
customers of the closure", without prior consultation with or
notice to plaintiffs. Id. ¶ 58.

On October 29, 2019, plaintiffs formally terminated the
Distributor Agreement. Id. at ¶ 59.  In their Termination Letter
(Ex. H), plaintiffs requested that defendants "cease all
marketing and sales activities under those or any other
agreements between the parties, and to refrain from using any of
the intellectual property of Hectronic GmbH or Hectronic AG,
including the various 'Hectronic' trademarks." Id. Ex. H at 1.

On February 7, 2020, following the termination of the
Distributor Agreement, plaintiffs provided defendants notice of
Pure Parking's default of the payments due under the Note, along
with the required opportunity to cure. Id. Ex. E. Pure Parking
did not cure. Id. ¶ 50. Hectronic AG then exercised its right
under paragraph 4 of the Note to declare "the entire unpaid
amount of principal and interest . . . to be immediately due and
payable." Id. Ex. B. ¶ 4.

Since the agreements were terminated, the Cardillos have
nevertheless continued to market and try to sell Hectronic
products, including the CITEA Smart Parking Terminal and HECTWIN
parking equipment, through defendant Power Door's (the
Cardillos' other company) website, which has featured the
Hectronic marks and products in multiple locations. Id. ¶¶ 62-
63, Ex. I.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6), the court
accepts all factual allegations in the complaint as true, and

draws all reasonable inferences in the plaintiff's favor. Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)(internal citations and quotation marks omitted).

### COUNTS I, II AND IV: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER THE LANHAM ACT AND COMMON LAW UNFAIR COMPETITION

To succeed on trademark infringement and unfair competition claims brought under the Lanham Act, "in addition to

demonstrating that the plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009). "The elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham Act, except that plaintiff must show bad faith by the infringing party." Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc., 64 F.Supp.3d 494, 514 (S.D.N.Y. 2014)(internal quotations omitted).

Defendants move to dismiss Counts I, II and IV on the basis that plaintiffs have not adequately pled that (1) the Hectronic marks are entitled to protection; (2) defendants' use of the marks is likely to cause confusion; and (3) defendants have acted in bad faith.[2] Defendants also assert the affirmative defense of unclean hands.

Defendants arguments and affirmative defense are unavailing for the reasons detailed below.

---

[2] Defendants also argue that plaintiffs' trademark claims should be dismissed as duplicative of the breach of contract claims. Dfs. Reply Br. at 8-9. That argument is unpersuasive. The trademark claims are against Power Door, who is not a party to any of the allegedly breached agreements. The determination of whether the other defendants breached the agreements by, for example, failing to pay the full purchase price as required by the Note or failing to market the products in a manner reasonably acceptable to Hectronic Gmbh pursuant to the Distributor Agreement, has no bearing on the question of whether Power Door infringed on plaintiffs' marks, a claim for which plaintiffs have alleged independent facts.

-8-

### 1. Protection

"A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)). "If the allegedly infringed mark is unregistered, the burden is on plaintiff to prove that its mark is a valid trademark." BBK Tobacco & Foods, LLP v. Galaxy VI Corp., 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

Plaintiffs allege that both "HECTRONIC" and "CITEA" are federally registered marks. Compl. ¶¶ 22-24. Therefore, plaintiffs have adequately pled that these two trademarks are protected.

Plaintiffs allege that the unregistered "HECTWIN" mark is valid and legally protectible because it is "inherently distinctive and/or it has acquired secondary meaning in the minds of consumers." Id. ¶ 79. Plaintiffs allege that the mark is used "in connection with the sale of parking terminals that control parking entry/exit gates" and that "HECTWIN" has come to "identify Hectronic's products", "distinguish those products from the products of others" and "represent and symbolize the substantial goodwill belonging exclusively to Hectronic". Id. ¶¶ 25, 27. Based on these allegations, the Court finds that

"HECTWIN" is a fanciful, and thus protected, mark. See Trombetta v. Novocin, 414 F. Supp. 3d 625, 630-31 (S.D.N.Y. 2019)("To determine whether a putative mark qualifies as such, courts will first classify the mark as generic, descriptive, suggestive, arbitrary, or fanciful."); see also Gruner + Jahr USA Pub., 991 F.2d 1072, 1076 (2d Cir. 1993)("A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products."); Classic Liquor Importers, Ltd. v. Spirits Int'l B.V., 201 F. Supp. 3d 428, 442-43 (S.D.N.Y. 2016)(fanciful marks "do not communicate any information about the product either directly or by suggestion and enjoy the strongest protection.")(internal quotation marks omitted).

The "HECTWIN" mark does not "communicate any information" regarding the parking terminals and is merely used to identify the products as belonging to Hectronic. Given its fanciful classification, the "HECTWIN" mark is inherently distinctive and entitled to protection. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992).

### 2. Likelihood of Consumer Confusion

To determine whether an alleged infringement is likely to cause consumer confusion, Courts in this Circuit typically apply the eight-factor test set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961). See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823

-10-

F.3d 153, 160 (2d Cir. 2016). These factors, however, are "more geared towards comparing two distinct, albeit similar, marks", Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 400 (S.D.N.Y.2000), and are designed to be applied to "non-competitive items". See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1100 (2d Cir. 1969). Application of the factors is therefore "unnecessary where use of an identical or counterfeit mark is at issue, because such use is inherently confusing, and so consumer confusion is presumed." Mun. Credit Union v. Queens Auto Mall, Inc., 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015)(citing C=Holdings B.V. v. Asiarim Corporation, 992 F. Supp. 2d 223, 240–41 (S.D.N.Y.2013))(internal quotation marks omitted).

Plaintiffs allege, and defendants appear to concede, that Power Door used the identical Hectronic marks on the Power Door website to advertise apparently identical products, without plaintiffs' consent. Compl. ¶¶ 63, 65, Ex. I; see also Dfs. Br. at 14 ("While it is true that the same trademark is being used by both parties . . ."). Accordingly, plaintiffs adequately pled that Power Door used a counterfeit mark, and consumer confusion is thus presumed.

### 3. Bad Faith

For an unfair competition law claim under New York law, the inquiry into the requisite element of bad faith "considers whether the defendant adopted its mark with the intention of

capitalizing on the plaintiff's reputation and goodwill and on any confusion between [its] and the senior user's product." Int'l Diamond Importers, Inc., 64 F. Supp. 3d at 514 (internal citation and quotation marks omitted). "Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 389 (2d Cir. 2005).

Plaintiffs state that "Defendants Karen Cardillo, Paul Cardillo, and Power Door Products are each aware that their continued use of Hectronic's trademarks violates Hectronic's ownership rights in those marks, but have continued to use the marks nonetheless, thus demonstrating Defendants' bad faith." Compl. ¶ 104. This allegation is sufficient to support an inference of bad faith at this stage. See Castle Rock Entm't v. Carol Pub. Grp., Inc., 955 F. Supp. 260, 274 (S.D.N.Y. 1997), aff'd sub nom. Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132 (2d Cir. 1998) ("Any inquiry into a defendant's alleged bad faith and the potential for consumer confusion necessarily entails a factual inquiry.")(internal quotation marks omitted).

### 4. Unclean Hands

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67,

74 (2d Cir. 1998).

Defendants' unclean hands argument is based on plaintiffs' alleged violation of "Defendants' exclusive distribution rights", Dfs. Br. at 11, which are set forth in the SPA as a modification to the Distributor Agreement. See Compl. Ex. A. § 6.6. Defendants argue plaintiffs violated the agreement by awarding a distributorship to a third-party, Mobile Smart City, and by disclosing "HUSA's customer lists to Mobile Smart City — an effort to divert business away from HUSA and damage our business." See Cardillo Affidavit ¶ 6.

The Complaint, however, does not refer to any agreement between plaintiffs and Mobile Smart City, and while it appears the parties did intend to modify the Distributor Agreement to include the aforementioned exclusivity provision, the Distributor Agreement attached to the Complaint contains no such modification. See Compl. Ex. C. Defendants' argument, therefore, would require the Court to rely on facts which are extraneous to the Complaint, and it is thus inappropriate for the Court to rule on the affirmative defense at this stage.

### 5. Infringement and Unfair Competition Claims against the Individual Defendants

Plaintiffs seek to hold defendants Karen and Paul Cardillo personally liable for the alleged infringing acts committed by Power Door, the corporation of which they are co-owners and also serve as Executive Vice President and President, respectively.

-13-

Compl. Ex. I at 18.

"[U]nder the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active, conscious force behind [the defendant corporation's] infringement." KatiRoll Co., Inc. v. Kati Junction, Inc., 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014)(internal quotation marks omitted)(bracketed insert in KatiRoll). "A corporate officer is considered a 'moving, active, conscious force' behind a company's infringement when the officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." Steven Madden, Ltd. v. Jasmin Larian, LLC, No. 18 CIV. 2043, 2019 WL 294767, at *3 (S.D.N.Y. Jan. 22, 2019)(internal quotation marks omitted); see also KatiRoll, 33 F. Supp. 3d at 367 ("A showing that an officer authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient participation in the wrongful acts to make the officer individually liable.") (internal quotation marks omitted).

In support of their claims against the Cardillos, Plaintiffs allege that "Through their separate company, Defendant Power Door Products, Karen and Paul Cardillo have continued to market and to try to sell HECTRONIC parking products." Compl. ¶ 62. They also state that "Defendants Karen

-14-

and Paul Cardillo, who previously knew of Hectronic's rights in these trademarks and who knew that Hectronic had terminated the Distributor Agreement, have been the moving, active, conscious force behind the infringement by Defendant Power Door Products." Id. ¶ 74.

These conclusory allegations are insufficient to allege plausibly that either Karen or Paul Cardillo should be held individually liable for Power Door's purported infringement. First, while the Cardillos own Power Door, they are not its sole employees (see Compl. Ex. I at 19, showing photographs of eight staff and technical team members). Second, most of the allegations regarding the alleged infringement are against "Defendants" as a group; plaintiffs do not make any specific allegations detailing how the Cardillos participated in or authorized Power Door's use of the Hectronic marks. See Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000) (allegations in support of individual liability for "sole or part owner" insufficient where there were no other details of participation in alleged infringement); see also Adamou v. Cty. of Spotsylvania, Virginia, No. 12 CIV 07789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)("Pleadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.").

Accordingly, defendants' motion to dismiss Counts I, II and IV is denied as to defendant Power Door and granted as to

defendants Karen and Paul Cardillo. See Steven Madden, Ltd. 2019
WL 294767, at *6 (conducting one individual liability analysis
for both Lanham Act claim and common law unfair competition
claim).

### COUNT III: FALSE ADVERTISING

"A claim under the Lanham Act for false advertising
requires allegations that: (1) the advertisement is literally
false, or (2) although the advertisement is literally true, it
is likely to deceive or confuse consumers." Societe Des Hotels
Meridien v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126,
132 (2d Cir. 2004)(internal quotation marks omitted). Plaintiffs
must also allege that "defendants misrepresented an inherent
quality or characteristic of the product. This requirement is
essentially one of materiality . . . ." Nat'l Basketball Ass'n
v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) (citations
and internal quotations omitted).

In support of their false advertising claim, plaintiffs
allege that Power Door posted various images of the Hectronic
marks on its website, and "by using the HECTRONIC, CITEA, and
HECTWIN marks, as described above, Defendants have made false
and misleading statements." Compl. ¶ 90.  The Complaint attaches
the images from Power Door's website that contain the Hectronic
marks. See Compl. Ex. I.  Some of these webpages contain
descriptions of the HECTWIN and CITEA products. Id. at 9-17.
Other webpages include the "HECTRONIC" mark in the list of Power

-16-

Door "Vendors". Id. at 5, 8, 22. The Complaint does not specifically state what in these advertisements is false and misleading.

Taken as a whole, the allegations support a reasonable inference that Power Door's advertising of "Hectronic" in the website's "Vendors" section is "literally false", since, based on the facts alleged, Hectronic was never a Power Door vendor. The Complaint does not, however, sufficiently allege how the descriptions of the HECTWIN and CITEA products are "literally false", or, if their claim is that the advertisements are "literally true", plaintiffs fail to adequately allege consumer confusion or deception.[3] And for all the advertisements cited, the Complaint does not contain any facts, besides the conclusory allegation in paragraph 92 ("The false and misleading statements are material") that would support a reasonable inference that defendant misrepresented an inherent quality or characteristic of the Hectronic products.

Therefore, the motion to dismiss Count III is granted.

COUNTS V, VI, VII AND IX: BREACH OF CONTRACT

Plaintiffs allege three counts of breach of contract. Defendants' only argument in support of their motion to

---

[3] While plaintiffs established a presumption of confusion as to the *origin or source* of the products for their infringement and unfair competition claims, that presumption does not extend here where the inquiry for false advertising is whether there is confusion or deception regarding the *characteristics or qualities* of goods or services. See e.g., Merck Eprova AG v. Gnosis S.P.A., No. 07 CIV 5898, 2011 WL 1142929, *5 (S.D.N.Y. Mar. 17, 2011).

dismiss the claims is that plaintiffs cannot enforce the agreements because plaintiffs committed a prior material breach when they awarded another US distributorship to Mobile Smart City. Dfs. Br. at 16. But this argument would again require the Court to make findings based on facts external to the Complaint which are neither incorporated by reference therein nor integral thereto. See BankUnited, N.A. v. Merritt Envtl. Consulting Corp., 360 F. Supp. 3d 172, 184 (S.D.N.Y. 2018)("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents. A document is integral to the complaint where the complaint relies heavily upon its terms and effect.") (internal citations and quotation marks omitted). Since defendants do not support their argument with any facts found on the face of the Complaint, the Court will not dismiss plaintiffs' breach of contract claims on that basis.

Plaintiffs' simplest and most salient allegation of breach is against Pure Parking for its alleged failure to pay the remainder of the purchase price for the acquired 80% interest in the Company, as required by the Note. See Compl. ¶¶ 35, 50-51, 108-114. That claim has been adequately pled.

Next, plaintiffs claim Hectronic USA violated the Distributor Agreement by: (1) failing and refusing to market and advertise the Company's products in a reasonably acceptable manner (Compl. ¶ 118); (2) supporting competitor Power Door in

violation of the non-compete provisions (Id.); (3) refusing to return documents and to stop representing itself as a Hectronic distributor (Id.); and (4) failing to pay for the goods and services provided by Hectronic GmbH. Id. Those allegations are also sufficient to survive a motion to dismiss.

Finally, plaintiffs allege that Pure Parking breached the SPA "by continuing to use (through Hectronic USA and also through the Cardillos' related company, Power Door Products) the HECTRONIC mark in violation of sections 5.5 and 6.8 of the Stock Purchase Agreement." Compl. ¶ 124. Without specific allegations showing how Pure Parking breached these provisions,[4] or others, plaintiffs have not sufficiently alleged breach, and their claim must be dismissed. However, it appearing that amendment may not be futile, the Court sua sponte grants plaintiff thirty (30) days leave to amend Count VII consistent with this Opinion and Order. See Found. Ventures, LLC v. F2G, LTD., No. 08 CIV. 10066 PKL, 2010 WL 3187294, at *10-11 (S.D.N.Y. Aug. 11, 2010).

Plaintiffs also allege that defendants Karen Cardillo, Pure Parking and Power Door are liable for Hectronic USA's breach of the Distributor Agreement as the alter egos of Hectronic USA. Compl. ¶¶ 133-137.

---

[4] Section 5.5 is merely an acknowledgement of ownership and does not require Pure Parking to take or refrain from taking any action.  Section 6.8 grants to the Company, not Pure Parking, a non-exclusive, non-transferable license to use the name Hectronic and its associated logo, and, like Section 5.5, does not explicitly impose any requirements or obligations upon Pure Parking.

To pierce a corporate veil under Delaware law,[5] a plaintiff must show that the individual has "complete domination and control over the entity such that it no longer has legal or independent significance of its own." Carotek, Inc. v. Kobayashi Ventures, LLC, 875 F. Supp. 2d 313, 350 (S.D.N.Y. 2012) (internal citations and quotation marks omitted). Under the alter-ego theory of veil piercing, "a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 176 (2d Cir. 2008)(internal quotation marks omitted). This is a two-prong test, analyzing "(1) whether the dominant shareholder and the corporation in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 386 F. Supp. 3d 319, 355 (S.D.N.Y. 2019)(internal citations omitted).

> Some specific facts a court may consider when being asked to disregard the corporate form include: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.

---

[5] Although defendants argue New York law should apply to the alter-ego/veil piercing claim, Hectronic USA is incorporated in Delaware, and therefore the Court looks to Delaware law to address plaintiffs' theory. See Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders . . . .").

EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V., No. CIV.A. 3184-VCP, 2008 WL 4057745, at *12 (Del.Ch. Sept. 2, 2008)(internal quotation marks omitted). The alter ego inquiry under Delaware law is a fact-intensive one. McBeth v. Porges, 171 F. Supp. 3d 216, 233 (S.D.N.Y. 2016)(citing Case Fin., Inc. v. Alden, No. 1184-VCP, 2009 WL 2581873, at *4 (Del.Ch. Aug. 21, 2009)).

In support of their argument that the three defendants exercised the requisite domination over the Company, such that it no longer functioned as a separate entity, plaintiffs cite:

(a)  the absence of corporate formalities observed by Hectronic USA;
(b)  inadequate capitalization of Hectronic USA;
(c)  funds, in the form of the loans described above, being put in or taken out of Hectronic USA for purposes other than Hectronic USA purposes;
(d)  overlap in owners, officers, and personnel;
(e)  common office space and telephone numbers;
(f)  the lack of business discretion displayed by Hectronic USA;
(g)  the failure to deal with Hectronic USA at arms' length;
(h)  the payment of debts, or obligation to pay debts, by Hectronic USA to Pure Parking and/or Power Door Products;
(i)  Power Door Products using the property of Hectronic USA as if it belonged to Power Door, as described above.

Compl. ¶ 134. Plaintiffs allege that these acts of domination and control were used to commit wrongdoing, injustice and unfairness against Hectronic GmbH under the Distributor Agreement by causing Hectronic USA's failure to pay for the goods and services supplied by plaintiff and by aiding plaintiffs' competitor. Compl. ¶¶ 7, 57, 135.

Keeping in mind the fact-intensive nature of the analysis,

the Court cannot find, at this point, that plaintiffs fail to plausibly allege an alter-ego claim against defendant Pure Parking. The allegations plausibly suggest that under the control of its dominant shareholder, Hectronic USA did not abide by corporate formalities and operated as a facade for Pure Parking who "froze out Hectronic from the operation of the business" so that it could advance its own business interests, to the detriment of the Company and its minority shareholder. Compl. ¶¶ 5, 7, 57, 56, 58, 134.

Defendants Power Door and Karen Cardillo, however, are non-shareholders,[6] and plaintiffs have not alleged facts sufficient to show that either Ms. Cardillo or Power Door, as non-owners of Hectronic USA, exercised such domination and control over the Company as would render them a single entity operated for the benefit of their individual interests.

---

[6] Neither party addresses whether an equity ownership interest is a prerequisite to veil piercing under Delaware Law. The Court's own research suggests that the issue is not settled in Delaware.  In New York, an "equitable owner" may be found to be an alter ego of a corporation "where the nonshareholder defendant exercise[s] considerable authority over [the corporation] ... to the point of completely disregarding the corporate form and acting as though [its] assets [are] his alone to manage and distribute." Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1051 (2d Cir. 1997). (internal citation and quotation marks omitted)(alterations as in the text). Specific facts must be alleged that demonstrate the non-owner "dominated and controlled [the corporation] to such an extent that he or she may be considered its equitable owner." Roohan v. First Guarantee Mortg., LLC, 97 A.D.3d 891, 891, 948 N.Y.S.2d 200, 201 (2012); see also M & A Oasis, Inc. v. MTM Assocs., L.P, 307 A.D.2d 872, 874, 764 N.Y.S.2d 9, 12 (2003)(finding even if there is a basis to pierce the veil to reach a non-shareholder, such relief is not available in the absence of allegations that the non-owner used the corporate form to conduct business in his or her individual capacity, shuttling his or her personal funds in and out of the entity without regard for corporate formalities and to suit his or her own purpose).

Defendants' motion to dismiss Counts V and VI is denied.[7]
The motion to dismiss Count VII is granted with leave to amend.
The motion to dismiss Count IX is granted with respect to
defendants Karen Cardillo and Power Door and denied with respect
to defendant Pure Parking.

### COUNT VIII: BREACH OF FIDUCIARY DUTY

Plaintiffs allege breach of fiduciary duty claims against
Ms. Cardillo as Director of the Company and Pure Parking as its
majority shareholder.

Under Delaware law,[8] the elements of a claim for breach of
fiduciary duty are (i) the existence of a fiduciary duty and
(ii) a breach of that duty. Marino v. Grupo Mundial Tenedora,
S.A., 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011)(citing Heller v.
Kiernan, No. Civ. A. 1484-K, 2002 WL 385545, at *3 (Del.Ch. Feb.
27, 2002), aff'd, 806 A.2d 164 (Del.2002)). "Directors of a
Delaware corporation owe two fiduciary duties —care and loyalty.
The duty of loyalty includes a requirement to act in good faith.
. . .". In re Orchard Enterprises, Inc. Stockholder Litig., 88

---

[7] Since an award of attorneys' fees is authorized by the Note and plaintiffs'
breach of Note claim survives this motion to dismiss, plaintiffs allege facts
sufficient to state a plausible claim for relief of attorneys' fees.
Defendants' also move to dismiss plaintiffs' claim for attorneys' fees made
pursuant to Section 1117(a) of the Lanham Act. Because the existence of bad
faith has yet to be determined, the Court cannot resolve that issue at this
time. See Cache, Inc. v. M.Z. Berger & Co., No. 99 CIV. 12320 (JGK), 2001 WL
38283, at *16 (S.D.N.Y. Jan. 16, 2001).

[8] Because Hectronic USA is incorporated in Delaware, Delaware law applies to
the breach of fiduciary duty claims. See John Swann Holding Corp. v. Simmons,
62 F. Supp. 3d 304, 309 (S.D.N.Y. 2014)("Under New York choice of law rules,
the law of the state of incorporation governs claims for breach of fiduciary
duty against a corporation.").

-23-

A.3d 1, 32-33 (Del. Ch. 2014)(internal citations omitted).
Additionally, "Majority shareholders owe fiduciary duties to
minority shareholders, but the duty is narrow and breached when
majority shareholders exploit the minority shareholders."
Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P., 936 F.
Supp. 2d 376, 401 (S.D.N.Y. 2013)(internal citations and
quotation marks omitted).

Ms. Cardillo is a majority Director of the Company. Compl.
¶ 129. As such, she owes a fiduciary duty to the Company and its
shareholders. Plaintiffs allege she breached this duty by (1)
engaging in loan transactions with her other companies, without
notice to or approval of Hectronic AG, the minority shareholder
(Id. ¶ 56); (2) appointing her husband to the Company's Board of
Directors, again without notice to or approval of Hectronic AG
(Id. ¶ 55); (3) holding only one Board of Directors meeting and
not preparing minutes for this meeting (Id. ¶¶ 52-53); (4)
failing to make the books and records of the Company available
for inspection by Stefan Forster, the Company's other Director
(Id. ¶¶ 54, 130); and (5)unilaterally deciding to cease the
Company's operations (Id. ¶ 58).[9]

---

[9] Defendants argue that these actions enjoy the protection of the business
judgment rule, which presumes that "in making business decisions, the
directors of a corporation acted on an informed basis, in good faith, and in
the honest belief that the action taken was in the best interests of the
company." KDW Restructuring & Liquidation Servs. LLC v. Greenfield, 874 F.
Supp. 2d 213, 222 (S.D.N.Y. 2012)(citing Delaware law)(internal quotation
marks omitted). However, even if the actions can be characterized as
business decisions, which some do not appear to be, such decisions are not
shielded where the directors are: "(1) interested or lack independence
regarding the decision, (2) acting in bad faith, (3) lacking a rational

These claims are sufficient to plausibly allege Ms. Cardillo breached the fiduciary duties she owed to the Company. See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 67 (Del. 2006)(duty of loyalty may be breached "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation") (internal citation omitted).

Plaintiffs also allege that Pure Parking breached its duties as Hectronic USA's majority shareholder by "failing to hold an annual stockholders meeting", dominating and controlling the Company, allowing it to take on debts owed by Pure Parking, and requiring it to make loans for improper purposes. Id. ¶¶ 130, 134. These allegations sufficiently plead a breach of Pure Parking's fiduciary duty. See In re NewStarcom Holdings, Inc., 547 B.R. 106, 118 (Bankr. D. Del. 2016), aff'd, 608 B.R. 614 (D. Del. 2019), aff'd sub nom. In re NewStarcom Holdings Inc., 816 F. App'x 675 (3d Cir. 2020) ("The duty of loyalty requires that the best interest of the corporation and its shareholders take precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.")(internal quotation marks omitted).

---

purpose for the decision, or (4) grossly negligent (including failing to consider all available information)." Id. (internal citations and quotation marks omitted). Overall, plaintiffs' allegations support a reasonable inference that Ms. Cardillo lacked independence and/or acted in bad faith in her dealings with the Company, and therefore plaintiffs have adequately pled around the business judgment rule.

Defendants argue that plaintiffs' fiduciary duty claims should be dismissed as duplicative of the breach of contract claims. Dfs. Br. at 8-9. That argument is unpersuasive. Defendant Cardillo was not a party to any of the contractual agreements, and thus her fiduciary duty is not "based upon a comprehensive written contract", as defendants argue. Dfs. Br. at 9. Instead, Ms. Cardillo's fiduciary duty arose from her position as Director of the Company. That duty created obligations separate and apart from those created by the parties' contracts. See Grayson v. Imagination Station, No. 5051-CC, 2010 WL 3221951, at *7 (Del.Ch. Aug. 16, 2010) ("The relevant inquiry . . . is whether the obligation sought to be enforced arises from the parties' contractual relationship or from a fiduciary duty . . . . ."). The same finding applies to defendant Pure Parking. It is Pure Parking's status as majority shareholder that gave rise to its fiduciary duty, and the actions it undertakes to fulfill that duty are separate from its obligation to pay the contractually required purchase price for its share in the Company.[10]

---

[10] Although some of the underlying facts alleged in support of plaintiffs' fiduciary duty claims may overlap with those that form the basis of their contract claims, that does not render the claims entirely duplicative such that dismissal would be warranted. See McBeth v. Porges, 171 F. Supp. 3d 216, 232 (S.D.N.Y. 2016) ("Although the same facts underlie both claims, the appropriate question under Delaware law is not whether the claims arise from the same facts, but rather whether there exists an independent basis for the fiduciary duty claims apart from the contractual claims.") (citing PT China LLC v. PT Korea LLC, No. 4456-VCN, 2010 WL 761145, at *7 (Del.Ch. Feb. 26, 2010))(internal quotation marks omitted).

For these reasons, the motion to dismiss Count VIII is denied.

## CONCLUSION

Defendants' motion to dismiss (Dkt. No. 37) is granted in part and denied in part. The motion to dismiss Counts I, II and IV for trademark infringement and unfair competition under the Lanham Act and unfair competition under New York common law is granted with respect to defendants Karen and Paul Cardillo. The motion to dismiss Count III for false advertising under the Lanham Act is granted. The motion to dismiss Count VII for breach of SPA is granted with leave to amend. The motion to dismiss Count IX for veil piercing is granted with respect to defendants Karen Cardillo and Power Door. In all other respects, the motion is denied.

So ordered.

Dated:    New York, New York
          November 24, 2020

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.